UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA J. PATTERSON, | ) | Case No. 5:08 CV 0019 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Laura J. Patterson seeks reversal of the Commissioner's decision denying her application for supplemental security income. Patterson is a younger individual suffering from multiple physical and mental problems which limit her, according to the ALJ, to the exertional capacity to perform only one occupation, surveillance system monitor, which is reduced in number to 250 positions locally due to Patterson's restriction to routine work in a low stress environment. In fact the ALJ found Patterson to have extremely restricted abilities due to multiple physical problems and restrictions of a psychological nature. [1] Patterson's residual functional capacity was limited to sedentary work with a sit/stand option and allowance for use of a cane for ambulation, no climbing of steps and ramps without a railing, no rapid or repetitive movements of the wrists or hands, clean environment, routine, low stress tasks, no strict or high production quotas, no confrontation, negotiation, arbitration or intense interpersonal interaction, only limited contact with the public, and no work that requires Patterson to be responsible for the health , safety or welfare of others (Tr. 23-

---

[1] Patterson presents numerous physical impairments: displaced lumbar disc with spondylosis and spondylolisthesis; thoracic spasm, strain and sprain; asthma and/or chronic obstructive pulmonary disease; morbid obesity; bilateral carpal tunnel syndrome; hypothyroidism; gastroesophageal reflux disease; and , hypertension. The ALJ further accepted that Patterson had mental limitation due to bipolar disorder and /or major depressive disorder, and anxiety disorder. (Tr. 17-20).

5:08 CV 0019                                          2

24). Patterson's application for benefits was denied by an ALJ on February 20, 2007, and the Appeals Council adopted this decision making it the final decision by the Commissioner. See 20 C.F.R. §404.981.

Patterson contends that he is disabled based on the medical-vocational guidelines of Appendix 2, the opinion that Patterson is dysfunctional from the treating psychiatrist, Dr. Babai, and improper rejection of her credibility by the ALJ. This dispute has led to this appeal under 42 U.S.C. §405(g) and §1383(c)(3). The ALJ's determination included the consideration of a medical advisor and two vocational experts. Further, counsel's arguments and presentation required the ALJ to scrutinize the record to a degree rarely seen. From the ALJ's lengthy determination. (Tr. 14-36), it is obvious that Patterson's counsel worked diligently to present Patterson's claim in its best light.

This matter has been referred for report and recommended disposition, and for the reasons that follow, it is recommended that this matter be remanded to the Commissioner under the Fourth Sentence of 42 U.S.C. §405(g) because the ALJ found Patterson not credible essentially because her subjective complaints were not supported by the objective evidence and failed to state reasons in the determination consistent with SSR 96-7p and 20 C.F.R. §416.929 for a complete analysis .

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v.*

5:08 CV 0019 3

*Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(i) and (ii) and §416.920(a)(4)(i) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that she is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467,

5:08 CV 0019                                             4

2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Ellis v. Schweiker*, 739 F.2d 245 (6th Cir. 1984); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

*Dr. Babai's Opinion of Disability:*

Patterson argues that the ALJ failed to give sufficient weight to the opinion of the treating psychiatrist, Dr. Babai, or adequately consider the evidence of other medical providers. The ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2). The ALJ *must* apply the regulatory factors when explaining why the treating source was not accorded controlling weight. *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544. The ALJ also must consider the medical opinions "together with the rest of the relevant evidence." See 20 C.F.R. §404.1527(b) and §416.927(b). In short, the ALJ must provide "good reasons" to discount this opinion from a treating physician. See *Wilson v. Commissioner of Soc. Sec.* 378 F.3d at 544. Lack of *supportability* and *consistency* are legitimate criticizisms. Supportability is simply "[t]he more a medical source presents relevant evidence to support an opinion, particularly

5:08 CV 0019                    5

medical signs and laboratory findings, the more weight we will give that opinion. See 20 C.F.R. §§404.1527(d)(3) & 416.927(d)(3). 20 C.F.R. §404.1527(d)(2), and its SSI counterpart §416.927(d)(2), require that the treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." This includes reporting : (1) treatment provided; (2) extent of examination; and (3) testing (20 C.F.R. §404.1527(d)(2)(ii) and §416.927(d)(2)(ii)). Consistency is "the more consistent an opinion is with the record as a whole, the more weight we give that opinion." See 20 C.F.R. §§404.1527(d)(4) & 416.927(d)(4).

The ALJ pointed out that opinion of disability from Dr. Babai (Tr. 195) was followed by an inconsistent global assessment of functioning score (GAF) of 60, which indicated only "moderate" symptoms. (Tr. 26, 196).[2] Second, the ALJ explained that there was nothing in this psychiatrist's records to support his conclusions that Patterson was unable to cope with the demands of daily living or unable to concentrate or maintain attention. (Tr. 26-27). Patterson's argument suggests acceptance of Dr. Babai's opinion under the treating physician doctrine. The ALJ, however, did have substantial evidence to support his conclusions. The ALJ also did include consideration of the findings from Dr. Dallara's psychological examination at the behest of the state agency, in which that doctor also assigned a GAF score indicating "moderate" limitation but opined that mental impairments were limiting, but not disabling, as well as the testimony from the medical advisor, which again was contrary to Dr. Babai's conclusion (Tr. 28-29, 173-77, 595-614). In short the ALJ

---

[2] A GAF score of 51 to 60 is described as indicating: "**Moderate symptoms** (*e.g.* flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (*e.g.*, few friends, conflicts with peer or co-workers.).

American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, p. 34 (4th Ed. text revision).

5:08 CV 0019                                      6

provided "good reasons" to reject Dr. Babai's opinion of total disability upon consideration of the rest of the medical evidence.

*Vocational Evidence:*

The Commissioner concluded that Patterson was not capable of performing past relevant work, so the burden shifted to the Commissioner to establish that Patterson was capable of substantial gainful activity that was available in significant numbers. See 20 C.F.R.§416.1572, 416.972; 42 U.S.C.§423(d)(1)(A),§ 1328c(a)(3)(A) (substantial gainful activity), 42 U.S.C. §423(d)(2)(A), §1328c(a)(3)(B)(significant numbers).

The ALJ relied on two vocational experts to conclude that Patterson could perform other work at the fifth and final step of the sequential evaluation. The first vocational expert did, as Patterson points out, state that his conclusion was "questionable," but the ALJ's determination was supported by both vocational experts' testimonies, and hence there was substantial evidence in the record for this conclusion.

Patterson next challenges whether the vocational evidence provided the ALJ with a significant number of jobs. Under 42 U.S.C. §423(d)(2)(A) and its implementing regulation, 20 C.F.R. §416.966, work which exists in the national economy is work which exists in significant numbers either in the region where the applicant lives or in several regions of the country. See 20 C.F. R. §416.966(a). There is precedent that a mere 125 jobs existing locally constitutes a "significant number" of jobs. See *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999), citing

5:08 CV 0019                                                7

*Stewart v. Sullivan*, Case No. 89-6242, 1990 WL 75248 at *4 (6th Cir. 1990) (125 jobs in the local geographic area).

Patterson, though, takes the position that one sole occupation is not a significant number of jobs. This argument is contrary to the regulation, 20 C.F.R. §416.966, which distinguishes between the terms jobs and occupations:

> (b) How we determine the existence of work. Work exists in the national economy when there is a *significant number of jobs (in one or more occupations)* having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.(emphasis supplied)
>
> 20 C.F.R. § 416.966(b)

Thus, as noted by the Sixth Circuit, "[w]hile it may be true that 'approximately 200 unskilled sedentary occupations' exist in the U.S. economy, the burden is on the government to demonstrate that Plaintiff can do at least one of them." *Adkins v. Commissioner of Social Sec.*, 251 Fed.Appx. 346, 350, 2007 WL 3037281, 4 (6th Cir. 2007).

The undersigned, though, understands Patterson's point. In the governing regulations associated with Appendix 2, the phrase "range of work" refers to the occupational base and §416.966(b) must be read in light of this in regard to 20 C.F.R. Pt. 404. Subpt. P, App. 2, §202.00(c) pertaining to individuals of advanced age. See SSR 83-10; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1117 (9th Cir. 2006). However, the governing provision cited by Patterson is §201.00(h). This

5:08 CV 0019                                                    8

section does specifically require consideration of "the erosion of the occupational base" for younger individuals limited to less than the full range of sedentary work. However, unlike §202.00(c), this section does not conclude that the reduction in occupational base or range of work "warrant[s] a finding of disabled." Rather the exploration of vocational evidence:

> . . . requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust, considering his or her age, education, and work experience, including any transferable skills or education providing for direct entry into skilled work.
>
> 20 C.F.R. Pt. 404. Subpt. P, App. 2, §201.00(h)(3).

The foregoing section clearly grants leeway for administrative consideration of either reduction in occupations, "or the total number of jobs." Accordingly, there was substantial evidence derived from the vocational experts' testimonies that around 250 surveillance system monitor jobs existed locally for this to constitute a significant number of jobs despite the fact that only one occupation was identified by the vocational experts. [3]

---

[3] The vocational expert identified the surveillance system job as coded 379.367-010 (Tr. 619). The description of this job in the Dictionary of Occupational Titles is:

> CODE: 379.367-010
> TITLE(s): **SURVEILLANCE-SYSTEM MONITOR** (government ser.)
> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.
> GOE: 04.02.03 STRENGTH: S GED: R3 M1 L3 SVP: 2 DLU: 86

Patterson's reply interjects a new vocational argument over inconsistency with the *Dictionary of Occupational Titles's* description and the prohibition in the residual functional capacity against any job involving responsibility for the health and safety and welfare of others. (Tr. 24). It would be unfair to interject this new argument, and it should not be addressed at this time. However, it is certainly an issue that should be explored on remand.

5:08 CV 0019                                                    9

*Credibility:*

Finally, Patterson argues that the ALJ did not have a valid basis for discounting her credibility. Patterson relies on *Beavers v. Secretary of health, Education, and Welfare*, 577 F.2d 383 (6th Cir. 1978), for the proposition that there is no requirement that the underlying medical basis for subjective complaints of pain demonstrate inevitably. Evaluation of alleged disabling pain, though, has progressed since that case was decided and the ALJ is required to evaluate subjective pain under the format prescribed in 20 C.F.R. §416.929.

Patterson concedes that the ALJ went into great detail about what he considered, *but* she argues that the ALJ never actually states why he does not believe Patterson is in as much pain as she claims. Patterson contends that the ALJ merely stated that he does not believe Patterson based on the totality of the evidence. Patterson is correct. The ALJ's rationale is:

> The allegations of Ms Patterson and her brother, John M. Patterson, regarding the intensity, persistence, and functionally limiting effects of the symptoms produced by the impairments discussed in Finding # 2 above *are not sufficiently credible, and not sufficiently consistent with the objective medical evidence and other evidence in the case record*, to show that the symptoms produced by these impairments, severe and not severe, result in a residual functional capacity that imposes limits on Ms. Patterson's ability to work grater than, or in addition to, the limits in the residual functional capacity stated in the first paragraph of this Finding #4. I reached this conclusion based on all of the impairments, evidence, and testimony cited in Finding # 2 above, all of the other evidence in the record , and what I said elsewhere in the Finding #4. (emphasis supplied).

(Tr. 24).

The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act.  See

5:08 CV 0019                                              10

*Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Credibility determinations track pain analysis. See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). The rule is,

> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p, 1996 WL 374186 (S.S.A.) at *1.

The ALJ's discussion of this issue must contain clearly stated reasons. *Felisky v. Bowen*, 35 F.3d at 1036, citing *Auer v. Secty. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).  The Commissioner has elaborated on this point requiring that the administrative decisions, "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) SSR 96-7p, 1996 WL 374186 *1-2; *Saddler* at *2.

The ALJ acknowledged SSR 96-7p in assessing residual functional capacity. (Tr. 24). The format set forth in SSR 96-7p outlines the administrative evaluation process beginning with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3).  See *Duncan v. Sec'y of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

5:08 CV 0019                                                        11

Under the two-prong pain analysis, there first must be a determination whether there exists an underlying medically determinable physical or mental impairment followed by the question whether the impairment would be reasonably expected to produce the individual's pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *2. The second question then is the reasonableness of the alleged debilitating pain. The mandated considerations require the ALJ to investigate subjective complaints of pain or other symptoms based on:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of pain;

3. Precipitating and aggravating factors;

4. The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

5. Treatment, other than medication claimant has received for relief of pain; and

6. Any other measures used to relieve pain (e.g. lying down or changing position).

7. Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(i-vii); §416.929(c)(3)(i-vii).

Indeed the ALJ did recite extensive portions of the record. (Tr. 24-26). However, just as Patterson argues the conclusion was prohibited by SSR 96-7p because it consisted merely of a lengthy disregard of the Patterson's complaints as corroborated by her brother solely because they are not substantiated by objective medical evidence. The ALJ is not required to "expressly refer to each document in the record, piece by piece." *Coggon v. Barnhart*, 354 F.Supp.2d 40, 55 (D.Mass.2005). However, the ALJ is required to provide "specific reasons for the finding on

5:08 CV 0019                                                         12

credibility, supported by the evidence in the case record, [that] must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight[,]" aside from mere lack of substantiation by objective evidence. See SSR 96-7p, 1996 WL 374186 *1-2; *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621  at *2.  " It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms." *Zurawski v. Halter,*  245 F.3d 881, 887 (7th Cir. 2001). The ALJ must "build an accurate and logical bridge from the evidence to . . . conclusion." *Id.*, 245 F.3d at 887.  The ALJ did not apply the correct legal standard mandated by SSR 96-7p, and remand is required.

*Fourth Sentence Remand:*

Congress has authorized remand to the Commissioner under the fourth sentence where the district court does not retain jurisdiction even though new evidence may be considered. See *Faucher v. Secretary of HHS*, 17 F.3d 171, 174-75 (6th Cir. 1994), citing *Sullivan v. Hudson*, 490 U.S. 877, 880, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Generally, when the Commissioner misapplies the regulations or when one of the ALJ's factual findings is not supported by substantial evidence, recourse is through a remand under sentence four.  *Faucher*, 17 F.3d at 175-76. However, the Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.  *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d at 176;  *Mowery v. Heckler*,  771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983).

5:08 CV 0019 13

In regard to the credibility determination, it is not clear that there is overwhelming evidence that Patterson's subjective complaints should have been given full credence. As for the vocational experts' selection of "surveillance system monitor," this argument was not contained in the statement of errors but was raised in a reply brief, the undersigned's initial order does not provide for a reply brief, no leave was obtained to file the reply brief, and the Commissioner had no opportunity to address this argument in his response to the statement of errors. Consequently, this argument is not in consideration at this time.

## *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned finds that the Commissioner's decision denying supplemental security insurance benefits is not supported by substantial evidence and should be reversed and remanded under the Fourth Sentence of 42 U.S.C. §405(g) for reconsideration.

s/James S. Gallas<br>United States Magistrate Judge

Dated January 29, 2009.

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

5:08 CV 0019							14